IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN M., by his parents and next friends, CHRISTINE M. AND MICHAEL M., and CHRISTINE M. and MICHAEL M., | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) ) | No. 05 C 6720 |
| BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DIST. 202, EVANSTON TOWNSHIP HIGH SCHOOL DIST. 202, ALLAN ALSON, superintendent, sued in his official capacity, and ILLINOIS STATE BOARD OF EDUCATION | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO STAY JUDGMENT PENDING APPEAL

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs John M. ("John") and his parents Christine M. and Michael M. ("parents")filed a First Amended Complaint on March 17, 2006 against the defendants Board of Education of Evanston Township High School District 202 ("Board of ETHS"); Evanston Township High School District 202 ("ETHS"); the Illinois State Board of Education ("ISBE"); and Superintendent Dr. Allan Alson ("Dr. Alson"), seeking to appeal a due process administrative proceeding pursuant to the Individuals With Disabilities Education Act ("IDEA") and the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. § 1400 et seq. The plaintiffs additionally filed a motion for a preliminary injunction to enforce John's stay-put placement while their appeal of the administrative decision is pending, which this court

1

granted in its August 19, 2006 judgment. The defendants filed a timely notice for an interlocutory appeal to the United States Court of Appeals for the Seventh Circuit. At the same time, the defendants filed before this court a motion to stay the court's judgment from August 19, 2006 pending appeal under Federal Rule of Civil Procedure 62(c) (Dkt. No. 38). For the reasons stated below, the court grants the defendants' motion to stay in part and denies the motion in part, modifying the August 19, 2006 opinion in accordance with Rule 62(c).

## BACKGROUND[1]

Under 28 U.S.C. § 1415(j), known as the "stay-put" provision, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the partents otherwise agree, the child shall remain in the then-current educational placement . . ." The plaintiffs seek in their motion for preliminary injunction to enforce a stay-put placement for John so that he will continue to receive the services outlined in the last agreed-upon Individualized Education Program ("IEP") from May 2004. (Pl. Mot. Ex. A, hereinafter "May 2004 IEP.") The May 2004 IEP was created by John's former elementary school district Evanston Community Consolidated School District ("District 65"), where John was entering eighth grade at Haven Middle School. According to the May 2004 IEP, John had 600 minutes per week in a regular education classroom for reading, language arts, and math. (May 2004 IEP at 1.) The 600 minutes per week in a regular education classroom involved a "resource program with the majority of services provided in the regular education classroom" under what was

---

[1] In recognition of the defendants' assertion that the court improperly cited to the First Amended Complaint when making factual findings, the court has modified the "Background" of the opinion by citing to the record for findings of fact to clarify the portions of the record relied upon by the court.

referred to as the "inclusory model," administered by District 65 through "co-teaching." (*Id.*) The May 2004 IEP also provided for "inclusory strategies for Gen. Ed. Teachers" so that John could "advance appropriately toward attaining the annual goals, participate in the general curriculum, and be educated and participate with other students in educational activities." (*Id.* at 2.) John received an additional 200 minutes per week of resource. (*Id.* at 1.) The May 2004 IEP also called for 160 minutes per week of direct services by the speech teacher and 40 minutes per week of consultative services; 40 minutes per week of social work services; 30 minutes per week of direct services by the adaptive physical education teacher in gym class and consultive services as necessary; 80 minutes per month of direct service by the physical therapist in gym class; and 40 minutes a week of direct services by the occupational therapist in the regular classroom, plus 40 minutes a week of consultative services. (*Id.*)

Before John began his freshman year in high school, the defendants and John's parents had a series of meetings to draft John's IEP for his freshman year at ETHS. (Pl. Mem. Ex. B at 78; Pl. Mem. Ex. O at 320.) John's parents and the defendants disagreed over the written IEP for John, and John's parents challenged the drafted IEP in a due process hearing. (Pl. Mem. Ex. A at 3; Pl. Mem. Ex. K at 1.). In a pre-hearing order dated August 31, 2005, the hearing officer addressed the stay-put placement issue by entering a stipulation stating "The district has agreed to implement the student's 2004-2005 IEP and BIP at the start of the 2005-2006 school year and until a new IEP and BIP is developed by mutual agreement by an IEP team or resolved through this due process hearing and/or subsequent appeals." (Pl. Mem. Ex. A at 3.)

The administrative hearing was held in September and October 2005. (Pl. Mem. Ex. A at 3.) At the hearing, evidence was presented regarding the execution of John's May 2004 IEP at

3

District 65 and the services currently offered to John at ETHS under the stay-put provision, as well as ETHS's planned IEP for John. At the hearing, John's former special education teacher from District 65, Megan Peterson ("Peterson"), testified that during eighth grade she provided John with 600 minutes of co-teaching services in a regular education classroom in addition to 200 minutes per week in a separate resource classroom. (Pl. Mem. Ex. B at 66-67.) Peterson explained that in the co-teaching model she, as a special education teacher, was present in the regular classroom with the general education teacher, Monica Schaefer ("Schaefer"), and that she often meet with Schaefer to discuss the curriculum. (*Id.* at 84.)

Schaefer also testified, explaining how she co-taught with Peterson. (Pl. Mem. Ex. C at 114-117.) According to Schaefer, Peterson and her would corroborate and communicate about the lesson plan and focus on primary objectives of the curriculum. (*Id.* at 117.) Schaefer explained in her testimony that "[t]he co-teaching model was necessary for John because [Schaefer was] not an expert in special education, and with Miss Peterson in the classroom, she was able to teach John and other students on her caseload using her expertise. She was able to present the information in a way that the students understood what was being asked or what they need to do . . ." (*Id.* at 135-16.) Nor did Schaefer believe that consultative services would have been able to achieve the same results because when a student who does not understand a lesson or needs extra assistance, "it needs to be addressed at that moment or that opportunity could be lost and maybe not revisited during a resource time . . ." (*Id.* at 136.)

In addition to John's core education curriculum at District 65, John participated in gym class, receiving adaptative physical education services once a week. (Pl. Mem. Ex. D at 296-300.) John also interacted socially through a program called "Circle of Friends Group," in which

John and eight other students met once a week during lunch with a the social worker who facilitated the group. (Pl. Mem. Ex. K. at 9; Def. Mem. Ex. 1 at 112.)

Testimony was also heard on John's educational program at ETHS at the hearing, including that co-teaching was not offered to John or any other student at ETHS. (Pl. Mem. Ex. H at 538-39.) Instead, John's special education teacher may observe John in his general education classes of English, History, Algebra, and Biology for about 43 to 86 minutes a week and may provide consultation time of about 215 minutes a week. (Pl. Mem. Ex. F; Pl. Mem. Ex. I at 751-52, 777.) There is no provision of direct instruction within the general education classroom by the special education teacher. (*Id.* at 778.) In addition, John attends physical education in a regular classroom. (Pl. Mem. Ex. F.) The ETHS physical education instructor, Tom Chmela, testified that he did not work directly with John once a week in contrast to John's physical education classes at District 65. (Pl. Mem. Ex. G at 716-17.)

The administrative hearing officer on October 28, 2005 found that the defendants' proposed 2005-2006 IEP (hereinafter "disputed IEP") offered John a free appropriate public education. (Pl. Mem. Ex. K.) Reviewing the May 2004 IEP, the hearing officer disagreed with the term "co-teaching" as applied to John's educational program. (*Id.* at 22.) According to the hearing officer, the placement "would be more accurately characterized as a special education instructional placement that is delivered partially in regular education classroom for a variable amount of time on a daily basis. (*Id.*) Additionally, the hearing officer concluded that ETHS had "fully complied" with the requirements pertaining to the "stay put" placement. (*Id.*) Acknowledging that ETHS does not provide co-teaching for John, the hearing officer found ETHS to provide inclusive education in that John is not being pulled out of the regular education

classes where he used to be co-taught and sent back to a special education resource room instead. (*Id.*) The hearing officer highlighted as sufficient to satisfy the "stay put" placement ETHS's direct observation of John and consultative services, as well as the "extensive aids and supports" provided to John in a regular classroom. (*Id.* at 23.)

John and his parents filed a lawsuit in the district court appealing the administrative hearing officer's decision on November 28, 2005, and subsequently filed on March 28, 2006 this motion for preliminary injunction to enforce the stay-put placement, pursuant to 20 U.S.C. § 1415(j). Specifically identified in the motion for preliminary injunction to enforce the stay-put placement was the acknowledged failure of ETHS to provide 600 minutes per week co-teaching services to John.

After briefing by the parties on the stay-put placement, this court issued a memorandum opinion, granting the plaintiffs' motion and ordering enforcement of the stay-put provision for the May 2004 IEP in subsection (1) and (2) of the opinion. In subsection (2), the court enumerated the services from the May 2004 IEP and provided for John as part of his then-current educational placement at District 65 that ETHS was to provide during the pendency of this case pursuant to § 1415(j).[2] The court additionally ordered in subsection (3) that ETHS and John's parents meet to create a new IEP for John. In subsection (4), the court required the parties to exchange information and discovery on John's progress. The court vacated the hearing officer's decision to the extent it was inconsistent with the court's judgment. Following the court's entry

---

[2]The defendants are correct that the 120-minutes of social work services, which was above the 40-minute amount required in the May 2004 IEP, was a typo. (Def. Reply Br. at 9-10 n.6.) In subsection (2) of court's August 19, 2006 opinion, the court intended to require ETHS only to follow the requirements of John's educational placement while at District 65, but not to have to provide services beyond those requirements.

6

of judgment, the defendants filed a notice of appeal and the pending motion to stay enforcement of judgment pending appeal.

## LEGAL STANDARD

Under Rule 62(c), "when an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction," the court in its discretion may "suspend, modify, restore, or grant an injunction" during the pendency of an appeal "upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed. R. Civ. P. 62(c). Fed. R. Civ. P. 62(c). Although a notice of appeal normally divests the district court of jurisdiction, Rule 62(c) allows the court to retain jurisdiction for the narrow purpose of staying or modifying injunctive relief to preserve the status quo while the case is pending on appeal. *See Hasham v. Cal. State Bd. of Equalization*, No. 96 C 3326, 1998 WL 887083, *1 (N.D. Ill. Dec. 11, 1998). Rule 62(c) does not, however, restore jurisdiction to the district court to adjudicate anew the substantial rights directly involved in the appeal after either party has invoked its right of appeal and jurisdiction has passed to an appellate court. *Advent Electronics, Inc. v. Buckman*, No. 95 C 0305, 1995 WL 683833, *1 (N.D. Ill. Nov. 16, 1995); Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 2904 (2d ed. 2006); *see also Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1922) (statement of the rule before its codification in Rule 62(c)). When deciding whether to grant a stay and/or modify a judgment of injunctive relief during the pendency of an appeal, the court considers the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public

7

interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Hasham*, 1996 WL 887083 at *1.

## ANALYSIS

The defendants in their motion to stay judgment pending appeal refer to the above-cited factors that they must establish in order for the court to issue a stay, focusing first on whether they have made a strong showing that they will succeed on the merits of their appeal.[3] The defendants identify both legal and factual issues in support.

Turning first to the legal issues raised by the defendants, the defendants contend that the court improperly addressed the underlying merits of the case, converting a procedural motion for preliminary injunction to enforce a stay-put placement into a merits-based preliminary injunction judgment.[4] The defendants also cite two alleged factual errors made by the court in addressing the substantive merits of the case. After reviewing the August 19, 2006 opinion, the court agrees that its ordering the defendants in subsection (3) to work with the plaintiffs to create a new IEP and its factual findings regarding the substantive merits of the case went beyond the relief sought by the plaintiffs. Had the court been given the opportunity to modify the substance of the August 19, 2006 opinion, the court would delete that portion of the opinion. However, the court understands Rule 62(c) to allow the court only to stay or modify injunctive relief with regard to the status quo during the pendency of the appeal and not to reconsider and thus modify the substantive opinion granting injunctive relief. *Advent Electronics, Inc. v. Buckman*, No. 95 C

---

[3]As the plaintiffs point out, the defendants in their motion incorrectly stated the legal standard for motions to stay, omitting the adjective "strong" which modifies "showing."

[4]The defendants additionally argue that in reviewing the merits of the case, the court applied an incorrect standard of review. Based on the court's analysis of the defendants' argument, the court need not reach this secondary argument.

8

0305, 1995 WL 683833, *1 (N.D. Ill. Nov. 16, 1995); Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 2904 (2d ed. 2006); *see also Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1922) (statement of the rule before its codification in Rule 62(c)).

The court, however, does not believe that the defendants establish a strong showing of success on the merits regarding the remainder of the legal issues resolved in the August 18, 2006 opinion. For clarification purposes, the court sets out those legal issues.

The defendants had argued in their response to the plaintiffs' motion for a preliminary injunction first that the plaintiffs did not establish the typical standards for preliminary injunction relief. However, the typical standards for preliminary injunction relief do not apply injunctive relief to enforce a stay-put placement. *See Casey K. ex rel. Norman K. v. St. Anne Community High School Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) ("The stay-put provision has been interpreted as imposing an automatic statutory injunction . . .").

The defendants also had argued that ETHS complied with the stay-put provision even though ETHS admittedly does not provide the 600 minutes per week of co-teaching services. In support, the defendants had alleged that the May 2004 IEP requires only that John receive the special education services in his language arts and math regular education classrooms, but does not use the term "co-teaching." The stay-put provision states the student shall remain in the "then-current educational placement." 28 U.S.C. § 1415(j). "Then-current educational placement" has been interpreted in the Seventh Circuit to mean "something more than the actual school attended by the child and something less than the child's ultimate educational goals." *Bd. of Educ. of Comm. High School Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 549 (7th

9

Cir. 1996). Typically, "then-current educational placement" for disabled students refers to the child's general educational program. *Id.* at 548. Because the stay-put provision uses the term "then-current educational placement" instead of "then-current IEP," the stay-put provision covers more than just the four corners of the last-agreed upon IEP. There is no dispute that John received 600 minutes a week of co-teaching services under the May 2004 IEP, regardless of the omission of the specific term "co-teaching" in the May 2004 IEP. John's "then-current educational placement" encompasses 600 minutes a week of co-teaching services and the other services provided for John under the auspices of the May 2004 IEP. Finally, defendants incorrectly interpret in their reply brief to the motion to stay the court's August 19, 2006 opinion to not require ETHS to provide co-teaching services for John's stay-put placement. (Def. Reply Br. at 10.) To clarify, in subsection (2) the court intended to communicate that ETHS should adhere to John's May 2004 IEP and his then current-educational placement from District 65. The 800 minutes per week of special education services set out in subsection (2) include the 600 minutes per week of co-teaching services in John's May 2004 IEP that John was receiving at District 65 along with the 200 minutes per week of special education outside the regular education classroom.

The defendants alternatively had argued that ETHS provides John with comparable educational services and that it would be impossible for ETHS to give John 600 minutes per week of "co-teaching" services. In practice, "comparable" services have meant identical services but perhaps given in a different school. *See Casey*, 400 F.3d at 513 (analyzing *Johnson ex. rel. Johnson v. Special Educ. Hr'g Office*, 287 F.3d 1176 (9th Cir. 2002.). Two hundred and fifteen minutes a week of consultative special education services for John's regular classroom

10

teachers and 86 minutes a week of observing John's regular classroom along with a daily period of resource are not comparable to 600 minutes of co-teaching services in a regular classroom. Moreover, any argument about the impossibility of providing co-teaching services to John at ETHS is considered waived due to ETHS's stipulation in the pre-hearing conference that it will "implement the student's 2004-2005 IEP and BIP at the start of the 2005-2006 school year." (Pl. Mem. Ex. A at 3.) Because ETHS stipulated that it would implement the May 2004 IEP without asserting the need to adapt the May 2004 IEP to conform with ETHS's resources, the issue was never argued at the hearing and the hearing officer did not decide the issue. Allowing ETHS to raise that argument for the first time before this court would have unfairly prejudice the plaintiffs. ETHS had waived the impossibility argument. Hence, the defendants could not show a strong showing of a reasonable likelihood of success on appeal with regard to the stay-put placement ordered in subsections (1) and (2) of the August 19, 2006 opinion.

Nor could the defendants make a strong showing that they would be likely to succeed on appeal regarding the August 19, 2006 opinion's requirement in subsection (4) that the parties continue to exchange information and discovery on John's progress. The parties have already completed a discovery schedule and subsection (4)'s statement referred to the continuation of discovery.

Finally, the defendants note that the court cited only to the First Amended Complaint in its August 19, 2006 opinion, even though the defendants had denied the material allegations in the First Amended Complaint. The court has corrected this error in this opinion by clarifying in the "Background" section of this opinion where in the record the court found support for its factual findings in the August 19, 2006 opinion.

11

Turning to the rest of the factors the court must consider in granting a stay or modifying injunctive relief during the pendency of appeal, the court finds that the defendants would be irreparably harmed absent a stay and the plaintiffs would not be harmed if a stay is granted only with regard to its order in subsection (3) of the August 19, 2006 opinion for the parties to create a new IEP. However, the plaintiffs would be irreparably harmed if a stay was issued for the stay-put placement because John would not remain in his then-current educational placement. Furthermore, the general public would be harmed if a stay were granted on the stay-put placement issue. Congress purposefully legislated in 28 U.S.C. § 1415(j) that disabled, non-disruptive students in proceedings with the school regarding their IEPs would be allowed to continue under their then-current educational placement. Staying the grant of this relief would undermine Congressional intent.

## CONCLUSION

Accordingly, defendants' motion to stay the court's August 19, 2006 opinion during the pendency of their interlocutory appeal is granted in part and denied in part. The relief granted to the plaintiffs in subsection (3) of the August 19, 2006 opinion is stayed. All other relief granted in the August 19, 2006 opinion is not stayed. The August 19, 2006 opinion is modified in accordance with this opinion pursuant to Federal Rule of Civil Procedure 62(c).

ENTER:

*James F. Holderman* (signature)
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 26, 2006