IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN M., by his Parents and Next Friends, )
CHRISTINE M. and MICHAEL M., )
and CHRISTINE M. and MICHAEL M., )
)
      Plaintiffs, )
)
  v. ) No. 05 C 6720
)
BOARD OF EDUCATION OF EVANSTON )
TOWNSHIP HIGH SCHOOL DISTRICT 202, )
EVANSTON TOWNSHIP HIGH SCHOOL )
DISTRICT 202, Dr. ALLAN ALSON, )
its Superintendent, sued in his Official Capacity, )
and ILLINOIS STATE BOARD OF EDUCATION,)
)
      Defendants. )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

This action is an appeal of an administrative ruling rendered by an impartial hearing officer on the question of whether Evanston School District[1] violated the Individuals with Disabilities Education Act ("IDEA") as amended by the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. § 1400, *et seq.* in developing an Individual Education Program ("IEP") for plaintiff John M.'s freshman year at Evanston Township High School, 2005-2006.

---

[1] The named defendants include the Board of Education of Evanston Township High School District 202, Evanston Township High School District 202, Dr. Allan Alson (Superintendent), and the Illinois State Board of Education. Defendant Illinois State Board of Education is no longer in the case, as it has satisfied the statutory requirements set forth in Count II of Plaintiffs' First Amended Complaint. The remaining defendants have collectively referred to themselves as "Evanston School District," and the court will do the same.

1

Because John is now finishing the final semester of his senior year in a course of studies agreed upon by Evanston School District and John's parents, Evanston School District argues that the claims asserted in the First Amended Complaint are moot and must be dismissed.

For the reasons set forth below, Evanston School District's "Motion to Dismiss Due to Mootness," (Dkt. No. 89), is granted in part and denied in part.

BACKGROUND

When this lawsuit was first filed in November 2005, plaintiff John M. was fourteen years old and had just begun his freshman year at Evanston Township High School.[2] Prior to the beginning of John's freshman year, during the spring of 2005, representatives of Evanston School District met with John's parents on numerous occasions for the purpose of drafting a suitable IEP for John's freshman year. After the final IEP meeting on May 19, 2005, John's parents were dissatisfied with the manner in which the meetings were conducted and with the resultant IEP for John's freshman year. Accordingly, they requested a due process hearing before an impartial hearing officer pursuant to 20 U.S.C. § 1415(f). This hearing took place over five days in the fall of 2005 (September 12, 14, and 16 and October 19 and 20). On October 28, 2005, the hearing officer issued a 31-page decision, concluding that John's freshman year IEP "provided him with a substantive opportunity to obtain a free appropriate public education in the least restrictive environment" in accordance with the IDEIA [also called the "IDEA 2004"]. (Dkt. No. 13-3 at 30.) Plaintiffs appealed the hearing officer's decision to this court on November 28, 2005.

---

[2] John has Down Syndrome and is represented in this lawsuit by his parents, Christine M. and Michael M. (collectively "Plaintiffs").

Beginning in March 2006, this litigation proceeded on two fronts. In this court and before the United States Court of Appeals for the Seventh Circuit, Plaintiffs sought implementation of an appropriate "stay-put order" under which John would "remain in [his] then-current educational placement" during the pendency of this litigation. 20 U.S.C. § 1415(j).[3] In other words, Plaintiffs sought a preliminary injunction ordering Evanston School District to implement John's eighth grade IEP (developed in May 2004) until the lawfulness of John's freshman year IEP had been resolved.

At the same time the stay-put issue was being litigated, John's education was naturally progressing and Plaintiffs continued to negotiate with Evanston School District regarding each semester's placement and services in light of existing court orders, the parents' wishes, and the requirements of the IDEIA. When the stay-put issue was remanded from the Seventh Circuit,[4] the parties remained focused on settling their differences and implementing an appropriate educational program for John. Section § 1415(j) of the IDEIA permits the parties to agree to a stay-put

---

[3] Certain relevant portions of the IDEIA went into effect on July 1, 2005, after the final IEP meeting with Evanston School District took place and after John's parents filed their demand for a due process hearing, but before the hearing was held or the hearing officer's decision was rendered. *See* Pub. L. No. 108-446, Tit. III, § 302(a)(1), 118 Stat. 2647, 2803. Plaintiffs assert that "they are entitled to relief regardless of which version of the statute is applied." (1st Am. Compl. ¶ 8.) For ease of use, the court relies on the current version of the statue only and refers to the governing act as the IDEIA.

[4] On September 17, 2007, the Seventh Circuit held that John's "interim educational regime [at Evanston Township High School] must produce as closely as possible the overall educational experience enjoyed by [him] under his previous IEP." *John M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, 502 F.3d 708, 715 (7th Cir. 2007). To that end, the Seventh Circuit remanded Plaintiffs' request for a preliminary injunction to this court to determine whether the parties to the May 2004 IEP considered the co-teaching methodology to be "an essential part of the plan or as simply one of several ways by which the plan could be implemented." *Id.* at 716. The contours of the appropriate stay-put placement were accordingly left undecided at that time. The parties eventually agreed that the need to determine John's stay-put placement on remand had become moot in relation to John's future classes. (Dkt. No. 82.)

3

placement that differs from the student's "then-current educational placement" and, in this case, the parties do not dispute that they have been able to work together to resolve John's stay-put placement "for much of the past four years." (Pls.' Resp. at 5.)

As a result of these efforts, more than three years after the start of this litigation, the parties have now agreed to an educational program that will remain in place for the remainder of John's senior year at Evanston Township High School. John is expected to complete all of his academic requirements for graduation this spring, and to participate in graduation activities with the rest of his class. John will not actually graduate from Evanston Township High School, however, until he completes his transition program at Evanston Township High School or he reaches age 22, whichever occurs first.

## LEGAL STANDARD

"Article III of the United States Constitution limits this court's jurisdiction to actual, ongoing cases or controversies." *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 467 (7th Cir. 1996) (citing U.S. Const. art. III, § 2 and *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)). This requirement "subsists through all stages of federal judicial proceedings," and not just when the complaint is filed. *Lewis*, 494 U.S. at 477. "A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts.'" *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 597, 596 (7th Cir. 2006) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "Absent an actual live controversy, a case is moot and must be dismissed as nonjusticiable." *Steve L.*, 89 F.3d at 467.

4

ANALYSIS

1.  Declaratory and Injunctive Relief

The heart of this case involves Plaintiffs' appeal from the October 28, 2005 decision of the impartial hearing officer regarding John's special education. (1st Am. Compl. ¶ 1 (Dkt. No. 17).) Plaintiffs argue that the hearing officer committed reversible error by "ignor[ing], distort[ing], or fail[ing] to give due weight to substantial credible evidence from the elementary school staff and the Plaintiffs' other witnesses, who were knowledgeable about John's needs, while accepting evidence that is not credible or admissible on behalf of Defendants." (*Id.* ¶¶ 26, 28-29.) Their underlying claim before the hearing officer and before this court is that "the individualized education program ('IEP') drafted by Defendants prior to July, 2005" violated the requirements of the IDEIA. (*Id.* ¶ 8.)

The relief sought by Plaintiffs in this lawsuit is generally declarative and injunctive in nature. (*Id.* at Count I–Requested Relief ¶¶ B, C, D, E, F, G, H). Under Seventh Circuit precedent, such relief may become moot as a student progresses through school. *See Brown*, 442 F.3d at 597, 599 ("What was right for Bobby in kindergarten may not be the proper educational program when he enters the third grade. . . . Were we to decide, at this later date, whether mainstreaming was right for Bobby back in 2002-2003, we would be issuing, in effect, an advisory opinion."); *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000) (where student had already received compensatory education for violation of stay-put placement, court held remaining issue regarding whether the school had a duty to provide special education services in the future was moot due to student's graduation from high school ("no action this court might take would affect his or the School's rights")); *Steven L.*, 89 F.3d at 467 ("This court has no remedy to grant Andrew's parents. Judgment either way would not effect [sic] Andrew's fifth grade IEP, a

circumstance long gone.") Plaintiffs themselves recognize that the distinction between injunctive relief and claims for compensatory education is significant as it pertains to a mootness argument. (Pls.' Resp. at 6.)

Ultimately, almost all of the relief requested by Plaintiffs in their First Amended Complaint involves John's academic curriculum at Evanston Township High School—with the exception of their requests for compensatory education and attorney's fees and costs (discussed below). The parties agree, however, that negotiations over the academic phase of John's education are now complete. Plaintiffs do not argue that this court should order the relief requested in paragraphs B-H of their First Amended Complaint as a means of redressing their claims against Evanston School District, and the court finds that such relief would be inappropriate at this point in John's education. For example, there is no suggestion by either party that John will be enrolled in English, History, Physical Education, Biology, or Algebra after Spring 2009, or that he will have "regular classroom teachers" or "regular education classes" in the future. In this context, it does not make sense to require special education providers, co-teaching services, resource room, or any other "supplementary aids and services and support" to assist John in completing the general curriculum at Evanston Township High School. Plaintiffs seem to concede that most of their requested relief is moot at this point, recognizing that "John M. has received co-teaching and related services and therapies in accordance with his eighth grade IEP for much of the past four years" and stressing only that "the potential resolution of these issues does not negate the fact that Plaintiffs have specifically requested compensatory education relief in their Amended Complaint." (Pls.' Resp. at 5.)

Because the parties do not anticipate any further negotiations regarding the academic portion of John's education at Evanston Township High School, the court finds no reason to further address

the propriety of the hearing officer's October 28, 2005 decision. Any relief the court could award would be advisory in nature, as the parties will not be working together to address John's general curriculum needs in the future. Defendants' motion to dismiss is therefore granted to the extent the court finds that any issues regarding the hearing officer's decision have become moot.

2. Transition Services

Evanston School District recognizes that it will still be providing educational services for John until he graduates—that is, "until the completion of his transition program which will begin next year or until he reaches age 22, whichever occurs first." (Defs.' Mot. ¶ 10.) However, Evanston School District describes these transition services as "clearly distinct from the four year academic program at a high school," (Defs.' Mem. at 6), suggesting that any issues involving John's transition services are separate from the claims at issue in this lawsuit. Evanston School District further notes that "the issue of transition services was never the subject of the administrative due process proceeding," and argues that Plaintiffs cannot now raise issues regarding the provision of transition services "in a belated attempt to challenge John's freshman year IEP." (Defs.' Mem. at 6; Defs.' Reply at 5.)

Plaintiffs argue they have a live controversy because "transition services after John M.'s 'graduation' this school year are a required part of John M.'s IEP under the IDEA/IDEIA and Illinois law" and "only upon resolution of the disputed IEP . . . can the agreed upon IEP for John M. be supplemented to include the required transition services." (Pls.' Resp. at 7, 9.) Plaintiffs are correct that the IDEIA requires IEPs for students sixteen years old or older to identify postsecondary goals and the transition services necessary to assist the child in reaching those goals. 20 U.S.C. § 1414(d)(1)(A)(i)(VIII). However, the court does not agree that the parties are barred from

7

proceeding with transition planning at this point in the litigation. As discussed above, all issues regarding John's academic program within the general curriculum at Evanston Township High School are now moot. There is nothing prohibiting the parties from consulting and collaborating on the appropriate transition services for John's further education or from developing an appropriate IEP for the upcoming transition period.

There is also no reason the parties could not have supplemented their agreed-upon stay-put IEPs over the last several years with these types of services. *See* 20 U.S.C. § 1415(j) (permitting the parties to agree to a stay-put placement that differs from "the then-current educational placement"). Although Plaintiffs dispute Evanston School District's contention that the transition period is "an entirely different program which will be focused on his transition to post-high school life," (Defs.' Mot. ¶ 10), Plaintiffs do not articulate how or why John's transition program should be considered analogous to John's academic program. It appears to the court that these programs are distinct, as there is no indication that either party intends the transition program to include enrollment within the general curriculum. The fact that Evanston School District will be providing these services is not enough by itself to demonstrate that John's past IEPs remain relevant at this point in John's education.[5]

To the extent Plaintiffs argue that transition services "should have been included in supplements to John M.'s high school IEPs, which are the subject of this lawsuit," (Pls.' Resp. at 9), this argument comes too late. As Evanston School District has noted, this argument was not raised

---

[5] The court notes that Plaintiffs have explicitly disclaimed any intention of relying on the "capable of repetition yet evading review" exception to the mootness doctrine. (Pls.' Resp. at 7.) There is therefore no argument before the court that "the same complaining party would be subjected to the same action again" in relation to planning for John's transition services. *Steven L.*, 442 F.3d at 599 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

before the impartial hearing officer whose decision is under review. Plaintiffs argument that John's freshman year IEP should have provided for transition services is therefore not properly before the court. *Reed v. Lincoln-Way Cmty. High Sch. Dist.*, No. 98 C 4934, 2000 WL 696793, at *6 (N.D. Ill. May 30, 2000). Plaintiffs also have not taken any action to amend their First Amended Complaint to include claims alleging that Evanston School District has further violated the IDEIA by failing to include transition services in the IEPs they have provided for John since this litigation began. As Evanston School District notes, Plaintiffs are free to request a separate due process hearing to address Evanston School District's alleged failure to provide transition services. At this point, however, the issue is not properly before the court.

3. <u>Compensatory Education</u>

In their First Amended Complaint, Plaintiffs also seek compensatory education as a form of reimbursement for Evanston School District's alleged failure to comply with the IDEIA's stay-put provision. (1st Am. Compl. ¶ 30, Count I–Requested Relief ¶ J.) It is clear from the record that at some point in this litigation Plaintiffs and Evanston School District reached an agreement as to John's appropriate stay-put placement during the pendency of this litigation. (*See* Dkt. No. 82.) However, it is also clear that there was a period of time during which Plaintiffs claimed that Evanston School District had failed to comply with the IDEIA's stay-put provision. For this reason, Plaintiffs' claim requesting compensatory education as a remedy for Evanston School District's alleged violation of the IDEIA's stay-put provision remains relevant.

Although the IDEIA does not contain a specific provision authorizing compensatory education *per se*, "it authorizes the court to 'grant such relief as the court determines is appropriate.'" *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Todd A.*, 79 F.3d 654, 656 (7th Cir.

1996) (quoting 20 U.S.C. § 1415(e)(2) (now at 20 U.S.C. § 1415(i)(2)(C)(iii))). The Seventh Circuit has recognized that this provision empowers district courts to order compensatory education when appropriate to cure violations of the IDEIA. *Id.*

Citing *Erickson v. Albuquerque Pub. Sch.*, 199 F.3d 1116, 1122-23 (10th Cir. 1999), Evanston School District argues that a violation of the stay-put provision by itself is insufficient to warrant compensatory education as a form of relief. (Defs.' Reply at 3.) There are two problems with this argument. First, although *Erickson* does indeed state that "[i]n cases where the challenged IEP is ultimately found to be appropriate, parents cannot be reimbursed for any interim period in which their child's placement violated the stay-put provision," this statement is made in dicta, as the court specifically found that "[t]he school district did not violate the stay-put provision" in that case. *Erickson*, 199 F.3d at 1122-23. The Supreme Court case relied upon by the Tenth Circuit in *Erickson* addressed a situation in which the *parents* violated the stay-put provision by unilaterally changing their child's educational placement during the pending litigation. *See Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985) (stressing "that parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk"). That case does not address whether parents can recover compensatory education damages in situations where the school is alleged to have violated the stay-put provision of the IDEIA.

Second, Seventh Circuit precedent suggests that compensatory education may be awarded for violations of the IDEIA's stay-put provision. In *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588 (7th Cir. 2006), the plaintiffs belatedly argued before the court that they were entitled to monetary reimbursement due to the defendant's alleged violation of a stay-put injunction. *Id.* at 596.

The Seventh Circuit noted that "[r]elief in the form of reimbursement for out-of-pocket educational expenses, or 'compensatory education' as it is formally called" is an available equitable remedy within "the sound discretion of the district court." *Id.* at 597-98. However, the court found that the plaintiffs had waived their argument by not including it in their complaint, thereby "depriv[ing] the district court of an opportunity to exercise that discretion." *Id.* at 598. "Consequently, the Browns' claim for compensatory education is deemed waived and cannot supply the residual live controversy necessary to prevent their entire claim from being moot." *Id.*; *see also Todd A.*, 79 F.3d at 659 (finding question of school's potential liability for violation of the stay-put order is "independent of whether the underlying claim for compensatory education is moot").

The holding in *Brown* suggests that (1) compensatory education may be awarded to remedy violations of the IDEIA's stay-put provision; and (2) if a claim for compensatory education is set forth in the complaint, it does not become moot just because the related IEP claim has itself become moot. Other district court judges in the Seventh Circuit have found that "a claim for compensatory education would remain 'live' even if the original problems were ironed out." *Gail A. v. Marinette Sch. Dist.*, No. 06-C-1107, 2007 WL 895844, at *2 (E.D. Wis. Mar. 22, 2007); *accord Kerry M. v. Manhattan Sch. Dist. No. 114*, No. 03 C 9349, 2006 WL 2862118, at *5 (N.D. Ill. Sept. 29, 2006).

Because Plaintiffs have requested compensatory education in their First Amended Complaint as a remedy for Evanston School District's alleged violations of the IDEIA's stay-put provision, this court finds that Plaintiffs' case is not moot in its entirety. The issue of compensatory education (and the underlying question of whether Evanston School District violated the IDEIA's stay-put provision) remains pending before this court as an ongoing controversy that can be remedied through an appropriate court order.

Nothing in this opinion should be viewed as evidence that this court has taken any position on the ultimate questions of whether Evanston School District complied with the IDEIA's stay-put provision or the proper remedy for any non-compliance this court may find in this case.

4. <u>Public Policy</u>

Finally, Plaintiffs argue that granting Evanston School District's motion "will only incentivize school districts to delay a case as long as possible in order to render any IEP challenge moot." (Pls.' Resp. at 10.) Plaintiffs blame the delay in this case on "Defendants' neglect and dilatory tactics to thwart the stay-put IEP" and state that "Plaintiffs have been diligently litigating the issues related to their child's IEP for over three years." (*Id.* at 9-10.) This court disagrees with both assertions. There was nothing preventing Plaintiffs from pursuing their underlying claim in this court *while* the stay-put issue was being litigated here and before the Seventh Circuit. For reasons unknown to this court, Plaintiffs chose not to do so. Furthermore, from at least October 2007 through September 2008, the parties were proceeding in this case from a settlement posture. The court does not fault the parties for proceeding in this fashion, as these types of claims are often best addressed through a cooperative approach. This does not mean, however, that Evanston School District had an improper incentive to delay the case. If at any point Plaintiffs were dissatisfied with their settlement efforts, they could have informed the court that they wanted to proceed to trial on their underlying claim. This they did not do.

5. <u>Attorney's Fees and Costs</u>

To the extent Plaintiffs seek an award of attorney's fees and costs in this case, their request remains pending. Once the substantive elements of this case have been resolved, the court will be in a position to determine whether Plaintiffs are entitled to this type of relief as a prevailing party.

## CONCLUSION

For the foregoing reasons, Evanston School District's Motion to Dismiss Due to Mootness, (Dkt. No. 89), is granted in part and denied in part as follows: (1) all issues regarding the propriety of the impartial hearing officer's October 28, 2005 decision are dismissed as moot; and (2) Plaintiffs' claims for compensatory education and attorney's fees and costs remain pending before the court.

ENTER:

*James F. Holderman*
_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 16, 2009